# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1970

———————————————

Ibrahim Kariuki Mwangi

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: April 18, 2019
Filed: August 19, 2019

——————————

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Ibrahim Mwangi, a citizen of Kenya, was admitted to the United States in 1998 and overstayed his student visa. After his fourth arrest for driving under the influence, the Department of Homeland Security (DHS) commenced removal proceedings. Mwangi applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), alleging fear he would be killed if he returned to Kenya "because of owning land" and because he belonged to the Kikuyu tribe.

After a hearing, the immigration judge (IJ) ordered Mwangi removed to Kenya; the Board of Immigration Appeals (BIA) affirmed the IJ's decision on July 22, 2016. With new counsel, Mwangi filed a motion to reopen on December 22, 2017, alleging ineffective assistance of his former counsel. A motion to reopen must be filed "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); see 8 C.F.R. § 1003.2(c)(2). Mwangi now petitions for review of the BIA's denial of his untimely motion to reopen. Reviewing that decision for abuse of discretion, we deny the petition for review. See Valencia v. Holder, 657 F.3d 745, 748 (8th Cir. 2011) (standard of review).

At the removal hearing, Mwangi testified that he and his parents, brothers, and sisters inherited five acres of land from his grandfather in 1993. Mwangi's uncles (his mother's brothers) then hired the Mungikis, "a very violent, extremely violent gang," to attack Mwangi's family to force them off their land. In support, Mwangi's former counsel submitted an affidavit purportedly written by a Kenyan art professor and several letters purportedly written by a local chief in Kenya.

The IJ denied Mwangi's application for asylum because it was filed more than one year after his last arrival in the United States. The IJ denied withholding of removal because he found Mwangi's testimony not credible, and because Mwangi had not shown an objectively reasonable fear of future persecution on account of his membership in a particular social group if he was removed to Kenya. See 8 U.S.C. § 1231(b)(3). Mwangi filed motions to reopen and for reconsideration which the IJ denied. The BIA affirmed the IJ's decision on the merits without reaching the question of Mwangi's credibility. The BIA then denied Mwangi's untimely motion to reopen for two reasons: first, Mwangi had not "demonstrated due diligence" in filing the motion seventeen months after the BIA's merits decision; second, Mwangi had not shown prejudice -- that more effective assistance of counsel "would have changed the outcome of this proceeding."

-2-

In his petition for review, Mwangi argues the BIA erred in (1) failing to treat his motion to reopen as unopposed; (2) concluding he was not prejudiced by former counsel's ineffective assistance; (3) concluding he did not exercise due diligence in moving to reopen; and (4) failing to rule on his due process argument. We will address these issues in that order.

(1) Mwangi argues the BIA should have treated his motion to reopen as unopposed because DHS requested an extension of time to review the motion but never filed an opposition brief. The Attorney General's procedural regulation states that "[a] motion shall be deemed unopposed unless a timely response is made." 8 C.F.R. § 1003.3(g)(3). But it does not state that the BIA *must* grant an unopposed motion. The Second Circuit has rejected the argument that denial of an unopposed, non-frivolous motion to reopen is presumptively an abuse of discretion because "the burden is on the movant to establish his entitlement to reopening and there is no statutory or regulatory requirement that the Government file an opposition." Saydur v. Holder, 597 F. App'x 14, 16 (2d Cir. 2015). We agree. The regulations require BIA members to "exercise their independent judgment and discretion in considering and determining the cases coming before the Board." 8 C.F.R. § 1003.1(d)(1)(ii). Here, the BIA did not abuse its discretion in ruling on the merits of Mwangi's motion.

(2) In an affidavit supporting his motion to reopen, Mwangi alleged that former counsel torpedoed his asylum claims by hiring an art professor to testify about Kenyan land disputes and by instructing Mwangi to keep saying that he belonged to a "particular social group" if he didn't know the answer to the IJ's questions. Mwangi also alleged that former counsel improperly pocketed $2000 of the $2500 Mwangi paid to hire the art professor and improperly attempted to access Mwangi's bank and retirement accounts while Mwangi was detained.[1]

---

[1]Supreme Court of Missouri disciplinary documents report that Mwangi's former attorney was reprimanded by that Court in 2009, put on probation in 2015,

The BIA did not abuse its discretion in concluding that Mwangi failed to show that former counsel's incompetence prejudiced his asylum and withholding of removal claims. Mwangi's central persecution claim is that his uncles hired a criminal gang to attack his family because they wanted to steal the family's land. Though his original asylum application also claimed that he fears persecution because he is "from the Kikuyu tribe," Mwangi testified that his family has been persecuted because of the land that they own, and his affidavit accompanying the motion to reopen alleged there are "people who want to kill me, solely because I am inheriting land," not because he is a Kikuyu. Mwangi is related by blood to the uncles he fears. And his former attorney submitted an Australian government report stating that the Mungiki – the criminal gang his uncles allegedly hired to attack his family -- "are almost exclusively Kikuyu" and "seek a revival of Kikuyu culture."

As the IJ noted in denying Mwangi's initial motion for reconsideration, Mwangi's claim, "even if supported by credible testimony, does not support a claim for asylum and withholding of removal." His claim is simply "that he is involved in a personal land dispute with his uncles," not that he has been or will be persecuted because he is a member of a particular social group. Thus, a reopened removal proceeding correcting the alleged failings of Mwangi's former attorney -- that he damaged Mwangi's credibility by coaching him to repeat the term "protected social group," and procured an "expert" witness with no expertise relating to "ongoing violence in Kenya related to land disputes" -- would not have cured the basic flaws in Mwangi's asylum and withholding of removal claims.[2]

reinstated in 2017, and suspended in 2019. The BIA concluded that, in claiming ineffective assistance of counsel, Mwangi complied with the procedural requirements of its decision in Matter of Lozada, 19 I.&N. Dec. 637 (BIA 1988), but failed to show due diligence or a fundamentally unfair proceeding.

[2]Mwangi does not argue that former counsel's ineffective assistance prejudiced his claim for CAT relief. "Unlike asylum and withholding of removal, the CAT does not require [an alien to] show a protected ground to be eligible for relief," but "the

(3) An IJ and the BIA have discretion to equitably toll the 90-day deadline for filing a motion to reopen if the movant shows that he exercised due diligence. Equitable tolling "is not available to those who sleep on their rights." Valencia, 657 F.3d at 748. The BIA ruled that Mwangi did not exercise due diligence in not filing the motion to reopen until seventeen months after his removal order became final on July 22, 2016, when the BIA dismissed his initial appeal. See 8 C.F.R. § 1241.1(a).

Mwangi argues that former counsel frustrated his efforts to exercise due diligence by delays in providing him with his case files. However, as the BIA noted and Mwangi now admits, "it became clear at trial" that he was going to lose his asylum case because former counsel's coaching was damaging Mwangi's credibility with the IJ, and because the expert former counsel hired "seemed like a sham." Thus, Mwangi did not need his case files to put forth a claim of ineffective assistance. "In the immigration context, the doctrine of equitable tolling is sparingly invoked for ineffective-assistance-of-counsel claims." Pafe v. Holder, 615 F.3d 967, 969 (8th Cir. 2010) (quotation omitted). Like the petitioner in Pafe, Mwangi knew or should have known that counsel's conduct "was cause for concern." Id.; see Habchy v. Gonzalez, 471 F.3d 858, 865 (8th Cir. 2006).

In defense of his seventeen-month delay, Mwangi notes that his bank account was frozen and he was detained until October 2017, when he found a pro bono lawyer to help him. We are aware of the complexities of dealing with immigration law and its procedural requirements. But the fact that several months passed before Mwangi found a new lawyer is not enough to establish that the BIA abused its discretion in denying him the "sparingly invoked doctrine" of equitable tolling to file an untimely motion to reopen.

---

torture must be 'by or at the instigation of or with the consent or acquiescence of a public official.'" Marroquin-Ochoma v. Holder, 574 F.3d 574, 579 (8th Cir. 2009), quoting 8 C.F.R. § 1208.18(a)(1).

(4) Mwangi argues the BIA erred in failing to rule on his claim that he was denied due process. Mwangi's 17-page brief to the BIA in support of his motion to reopen briefly referred to due process in conclusory fashion: "An immigrant in removal proceedings has the right to due process, including a fair hearing . . . . But when the attorney purporting to represent the best interests of the immigrant is a crook . . . that right to due process is rendered nugatory." The BIA's decision focused on Mwangi's claim that it should exercise its discretionary authority to reopen the removal proceedings. The BIA did not abuse its discretion or commit an error of law by not explicitly addressing whether former counsel's conduct violated Mwangi's right to due process. "[T]here is no constitutional right under the Fifth Amendment to effective assistance of counsel in a removal proceeding." Rafiyev v. Mukasey, 536 F.3d 853, 861 (8th Cir. 2008).

For the foregoing reasons, we deny the petition for review.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

The Board did not abuse its discretion when it declined to stretch the 90-day deadline for seeking reopening to nearly a year and a half, as the court correctly holds. *See Habchy v. Gonzales*, 471 F.3d 858, 866 (8th Cir. 2006) (explaining that equitable tolling "is not available to those who sleep on their rights"). But because this holding fully resolves the dispute over whether the Board properly denied Mwangi's motion to reopen, there is no reason to address whether Mwangi would have *otherwise* been allowed to reopen the proceedings based on the alleged misdeeds of counsel. Accordingly, I concur and join all but Part (2) of the court's opinion.

_____